George F. Krug, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 46713. Promulgated July 31, 1934.

*Claude I. Parker, Esq.,* and *George H. Koster, Esq.,* for the petitioner.

*T. M. Mather, Esq.,* for the respondent.

OPINION.

Van Fossan: Respondent proposes to assess against and collect from the petitioner the sum of $17,127.60 as his liability as transferee of the property of the Krug Baking Co., a corporation, such amount having been assessed against that company for the year 1918.

The sole issue is whether or not the various statutes of limitation prevent such assessment and collection.

The material facts were stipulated substantially as follows:

The petitioner is an individual, residing in Los Angeles, California. During the year 1918 he was the principal stockholder of the Krug Baking Co. (hereinafter referred to as the Ohio Co.). The

Ohio Co. was organized under the laws of the State of Ohio in 1915 and was engaged in the baking business at 13 Joe Street, Dayton, Ohio. It was dissolved on March 21, 1921.

On the first day of July 1918 the Ohio Co. entered into a written agreement with William B. Ward by which the company agreed to sell and convey to Ward or his assignee all of the company's property of every kind whatsoever, real, personal, and mixed, for the consideration of $325,000, to be paid by the purchaser as follows: $25,000 in cash on the closing of title, five promissory notes of $20,000 each, bearing interest at the rate of 7 percent per annum, and the balance of $200,000 by executing a purchase-money mortgage for that amount to secure the payment of an issue of bonds payable in yearly amounts of $20,000 each, beginning January 1, 1925, and bearing interest at the rate of 6 percent per annum, payable semiannually. The seller agreed not to engage directly or indirectly in the baking business for a period of 10 years within a radius of 50 miles from the plant at Dayton, Ohio.

The agreement also provided, among other things, that:

The purchaser shall also assume and pay all of the debts and obligations of said company of every kind and description including its United States income taxes since January 1, 1918, with the understanding that such debts and obligations, but not including any excess profits or income tax as aforesaid, shall not be in excess of $10,000 over its bills and accounts receivable.

In accordance with the terms of the contract between Ward and the Ohio Co., Ward assigned all his rights and obligations under the contract to the Krug Baking Co., a corporation organized under the laws of the State of Delaware (hereinafter called the Delaware Co.). The Delaware Co. was thereupon substituted in place of Ward as purchaser of all the assets of the Ohio Co.

The consideration of $325,000 referred to in the aforesaid contract between the Ohio Co. and William B. Ward was paid to the Ohio Co. by the Delaware Co. The $325,000 was, upon dissolution of the Ohio Co., distributed to George F. Krug, principal stockholder. William B. Ward was not a stockholder of the Ohio Co., nor was any stockholder of that company a stockholder of the Delaware Co.

From July 1, 1918, until December 31, 1922, the Delaware Co. was engaged in the baking business at 13 Joe Street, Dayton, Ohio. On October 1, 1919, the Ward Brothers Co., a corporation organized under the laws of the State of New York, acquired all of the capital stock of the Delaware Co. On December 31, 1922, the Ward Brothers Co. succeeded to the assets and assumed all the liabilities of the Delaware Co. The assets succeeded to had a net value in excess of the amount of $13,254.34. The transfer of assets from the Delaware Co. to the Ward Brothers Co. was in liquidation of the capital stock

of the Delaware Co. owned by the Ward Brothers Co. The baking business formerly conducted by the Delaware Co. was conducted at the same location by the Ward Brothers Co. on and after December 31, 1922.

On June 16, 1919, there was filed with the collector of internal revenue for the first district of Ohio, Form 1120, final Federal income tax return of the Krug Baking Co. (Ohio) for the year 1918. The portion of the return (put in evidence at the hearing) on which the signature of the president and treasurer of the corporation should appear has been torn out. The return is not sworn to, the form prescribed for that purpose having been left blank.

The Commissioner of Internal Revenue caused an audit and investigation to be made of the Ohio Co.'s income tax return for 1918 and as a result of such audit and investigation the Commissioner assessed additional income and profits taxes for the year 1918 in the amount of $17,127.60 against the Ohio Co. The assessment was made on the Commissioner's June 1922 list, page 22, line 1, under date of July 19, 1922.

· Subsequently there were filed in the Treasury Department certain documents (waivers) dated, respectively, February 28, 1924, April 1, 1925, and November 3, 1925. The document dated February 28, 1924, was signed by the Commissioner of Internal Revenue and by G. G. Barber as treasurer and William B. Ward as president of the Krug Baking Co. G. G. Barber and William B. Ward were at no time officers, directors, stockholders, or agents of the Ohio Co. The documents dated, respectively, April 1, 1925, and November 3, 1925, were signed by the Commissioner of Internal Revenue and by " Ward Bros. Co. (successors to The Krug Baking Company Inc. by Brayton Campbell Sec'y and Treas.)." The three documents were the only documents filed which purported to extend the time within which taxes for the year 1918 might be assessed against the Ohio Co.

No part of the additional taxes assessed against the Ohio Co. on July 19, 1922, in the amount of $17,127.60 for the year 1918, has been paid.

The correct deficiency in tax of the Ohio Co. for the year 1918 is $13,254.34. The amount assessable or collectible from the petitioner as transferee of the Ohio Co. is not in excess of $13,254.34 for the year 1918.

On December 20, 1926, the Commissioner of Internal Revenue mailed by registered mail to the Krug Baking Co., 13 Joe Street, Dayton, Ohio, a notice of deficiency in tax in the amount of $27,825.55 for the calendar year 1918.

On February 18, 1927, there was filed with the Board of Tax Appeals by the Ward Brothers Co. a petition appealing from the

notice of deficiency dated December 20, 1926, directed to the Krug Baking Co. On July 5, 1927, the Commissioner filed his answer to the petition filed by Ward Brothers Co., which petition had been given Docket No. 24445 by the Board. On January 22, 1931, the Ward Brothers Co. filed a motion to dismiss the petition of February 18, 1927.

The motion to dismiss came on for hearing before the Board on February 4, 1931, and on February 10, 1931, the Board entered an order dismissing said appeal of the Ward Brothers Co. for lack of jurisdiction.

On July 18, 1927, the Commissioner mailed by registered mail a 60-day letter to the Ward Brothers Co., proposing against the Ward Brothers Co. a liability of $17,983.98 as transferee of the assets of the Krug Baking Co. of Ohio. A petition was filed with the Board by the Ward Brothers Co. on September 3, 1927, and given Docket No. 30992. In the petition the Ward Brothers Co. denied that it was a transferee of the assets of the Krug Baking Co. of Ohio. Subsequently the matter came on for hearing and was made the subject of a decision by the Board in *Ward Brothers Co.*, Docket No. 30992, promulgated November 30, 1931, and appearing at 24 B.T.A. 989. (A decision of no transferee liability was entered.)

On October 28, 1929, there was mailed to George F. Krug, the petitioner herein, 975 Westchester Place, Los Angeles, California, a 60-day letter proposing an assessment of $17,127.60 against Krug as transferee of the Krug Baking Co., Dayton, Ohio, under section 280 of the Revenue Act of 1926. The proposed liability of $17,127.60 has never been assessed against the petitioner and no proceedings in court have been taken by the Commissioner against Krug to enforce collection of the proposed liability in the amount of $17,127.60. No waiver or waivers of the statute of limitations for assessment and/or collection of additional taxes or liabilities for the year 1918 have ever been executed or filed by the petitioner.

The respondent seeks to hold the petitioner liable for the taxes of his transferor, pursuant to the provisions of section 280 (b) of the Revenue Act of 1926.[1] He also cites section 504 of the Revenue

---

[1] SEC. 280. (b) The period of limitation for assessment of any such liability of a transferee or fiduciary shall be as follows:

(1) Within one year after the expiration of the period of limitation for assessment against the taxpayer; or

(2) If the period of limitation for assessment against the taxpayer expired before the enactment of this Act but assessment against the taxpayer was made within such period,—then within six years after the making of such assessment against the taxpayer, but in no case later than one year after the enactment of this Act.

(3) If a court proceeding against the taxpayer for the collection of the tax has been begun within either of the above periods,—then within one year after return of execution in such proceeding.

Act of 1928,[2] amending section 277 (b) of the Revenue Act of 1926.

The petitioner contends that the assessment of the proposed transferee liability against him is barred by the statute of limitations, citing *United States* v. *Updike*, 281 U.S. 489; *Caroline J. Shaw, Executrix*, 21 B.T.A. 400, and similar cases.

We believe this case is controlled by the holding of the Supreme Court in *United States* v. *Updike, supra*. In that case the Court held that notwithstanding the failure of the taxpayer to make a return as required by law, thereby giving the Government the right to sue for collection at any time, if the Government chose to assess the tax against the corporation, such assessment started the running of the statute of limitations and a proceeding to collect from the stockholder must be brought within six years. The Court brushed aside the contention that in view of section 280 of the Revenue Act of 1926 a proceeding against the stockholders was not a proceeding to collect the tax, holding that it was " in every sense a proceeding to collect a tax " regardless of the fact that section 280 refers to the same as " the liability at law or in equity, of a transferee of property of a taxpayer, in respect of the tax * * * imposed on the taxpayer." Under the Court's opinion no distinction is to be drawn between the " tax " of the transferor and the " liability " of the transferee.

The Court pursued its reasoning further, by observing that:

The clear intent of section 278, as applied to the facts of the present case, was to designate the extent of time for the enforcement of the tax liability. Where, in a "no return" case, an assessment, which, under paragraph (a), may be made at any time, has in fact been made, a proceeding to collect must be begun within six years thereafter; but, where there has been no assessment, the proceeding may be begun at any time. In the present case there was an assessment, and it would not be doubted that the suit was barred at the expiration of the six-year period of limitation, unless for the presence of the words italicized above. Have these words the effect of averting the bar? We think not. An actual assessment having been made, it must be assumed that the government was in possession of the facts which gave rise to the liability upon which the assessment was predicated. In such case to allow an indefinite time for proceeding to collect the tax would be out of harmony with the obvious policy of the act to promote repose by fixing a definite period after assessment within which suits and proceedings for the collection of taxes must be brought.

---

[2] SEC. 504. SUSPENSION OF RUNNING OF STATUTE OF LIMITATIONS.

(a) Section 277 (b) of the Revenue Act of 1926 is amended to read as follows:

"(b) The running of the statute of limitations provided in this section or in section 278 on the making of assessments and the beginning of distraint or a proceeding in court for collection, in respect of any deficiency, shall (after the mailing of a notice under subdivision (a) of section 274) be suspended for the period during which the Commissioner is prohibited from making the assessment or beginning distraint or a proceeding in court (and in any event, if a proceeding in respect of the deficiency is placed on the docket of the Board, until the decision of the Board becomes final), and for 60 days thereafter.

The reasoning of the Supreme Court would seem to be equally applicable to the case at bar, although the *Updike* case was initiated under the provisions of section 278 of the 1926 Act, while the procedure here is under section 280 of that Act. Here no return as prescribed by law was filed. See *Lucas* v. *Pilliod Lumber Co.*, 281 U.S. 245. An assessment, however, was made in 1922 against the transferor. If an assessment invoked the statute of limitations in a case under section 278, it would seem to follow that it would have had similar effect under section 280. Respondent had six years in which to proceed against the transferee. *Caroline J. Shaw, Executrix, supra.* The notice of liability to the petitioner did not issue until 1929, or more than six years after the assessment was made. We are of the opinion that it came too late. See *Caroline J. Shaw, Executrix, supra; Frank L. Roche*, 21 B.T.A. 1139.

The respondent cites *American Equitable Assurance Co.* v. *Helvering*, 68 Fed. (2d) 46, to sustain his position that the statute did not run during the time a proceeding was pending before the Board.

The notice of liability was mailed to petitioner October 28, 1929. No assessment was ever made against him and no waivers were ever given by him. No proceeding had ever been filed by him or in his behalf. This proceeding was docketed December 24, 1929. The facts are very different in *American Equitable Assurance Co.* v. *Helvering*. There the preceding petition, which was dismissed for lack of jurisdiction, was filed by the same taxpayer who filed the later petition. Furthermore, an assessment was made against the taxpayer which the court held good as a jeopardy assessment. By the terms of the contract in that case, the petitioner agreed to pay the taxes of the predecessor company and the court held the Government could enforce this provision. We do not find the *American Equitable Assurance Co.* case to be authority in the present situation.

Reviewed by the Board.

> *Decision of no transferee liability will be entered.*