Vaughn C. PAYNE and Edith Pruitt Payne, Appellants,

v.

UNITED STATES of America, Appellee.

No. 15620.

United States Court of Appeals Eighth Circuit.

Aug. 8, 1957.

Rehearing Denied Sept. 17, 1957.

Claude I. Bakewell, St. Louis, Mo. (Gillette F. Wright, St. Louis, Mo. with him on the brief) for appellants.

Davis W. Morton, Jr., Atty., Dept. of Justice, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., A. F. Prescott, Atty., Dept. of Justice, Washington, D. C., and Harry Richards, U. S. Atty., St. Louis, Mo., with him on the brief) for appellee.

Before GARDNER, Chief Judge, JOHNSEN, Circuit Judge, and DONOVAN, District Judge.

JOHNSEN, Circuit Judge.

In 1949, the Commissioner of Internal Revenue made assessment, against Vaughn C. Payne, of tax deficiencies and fraud penalties, for each of the years 1942 to 1947, inclusive.

Notice of the determinations, which had been previously made, and demand for payment were properly served on Payne. And the assessment list was duly transmitted to and received by the Collector, with notice of lien being filed by him with the Recorder of Deeds for the City of St. Louis, Missouri.

Thereafter, from 1950 to 1953, Payne made payment of the deficiencies and penalties for the years 1942, 1945 and 1946, except interest thereon from the date of assessment to the time of payment.

On August 27, 1953, at the request of the Commissioner and on the direction of the Attorney General, this action was instituted in the District Court, against Payne and his wife,[1] (1) to have the remaining amount of the deficiencies, penalties and interest reduced to judgment against Payne; (2) to have it decreed that two described pieces of real estate, acquired in 1944 and 1945, with title taken and standing in the name of Payne and his wife as tenants by the entirety, had been purchased with funds of Payne, had left Payne without sufficient other assets to pay his outstanding tax liabilities, and had had for their transactional purpose the defrauding of Payne's creditors, including the United States; (3) to have it decreed that a third piece of real estate, acquired in 1947, with title taken and standing in the wife's name, had been purchased with funds of Payne, constituted a conveyance and transfer to her without consideration, and had left

---

1. Some other parties were also named as defendants, but they are not involved on this appeal.

Payne without sufficient assets to pay his outstanding tax liabilities; and (4) to have enforced under 26 U.S.C.A., Int. Rev.Code of 1939, § 3678, the lien, which existed from the Collector's receiving of the assessment list, as well as such other rights as the United States had in the circumstances to have the real estate subjected to the payment of the tax liability involved.

Between the institution of the suit and the time of the trial, Payne made payment of the deficiencies and penalties assessed for the year 1943 and a part of those assessed for the year 1944, but again without the interest due thereon from the date of assessment to the time of payment. At the time of trial, there remained a balance of deficiencies and penalties, for the years 1944 and 1947, in the sum of $19,799.21, together with the accumulated interest on the deficiency and penalty for each year, 1942 to 1947, from the date of the assessment until the deficiency and penalty for the year had been or should be paid.

The District Court entered a judgment against Payne on this basis. In so doing, it upheld all of the deficiencies determined by the Commissioner to exist, and found as a fact that the understanding of income in which Payne had engaged had been done by him with the fraudulent intent to evade part of the taxes owing from him for each of the years involved, so that the Commissioner had been entitled to impose the fraud penalties which he did, under 26 U.S.C.A., Int.Rev.Code of 1939, § 293(b).

The court further held that the two pieces of property, standing in the name of Payne and his wife as tenants by the entirety, had been purchased with funds of Payne, and that the using of Payne's funds for this purpose, with the taking of title in this form, had legally made Payne insolvent as to his creditors. It held also that this equally was true as to the third piece of property, title to which stood in the name of the wife

alone, and that, beyond this, the circumstances under which the wife had taken title had involved a specific intent on the part of both her and Payne to defraud his creditors, in that, when the property was purchased, title had been placed in the name of a third party, who had given back a deed in blank, and that the wife's name had been inserted in this deed as grantee, only after the Commissioner's assessment of tax deficiencies and fraud penalties had occurred and Payne had been given notice thereof.

The court accordingly decreed that the United States was entitled "to a reformation of the title of each of the real properties * * * vesting such title in the defendant Vaughn C. Payne, with whose funds such properties were purchased", and to have foreclosure and sale of the property made for the satisfaction of its liens thus existing, pursuant to 28 U.S.C.A. §§ 2001 and 2002.[2]

In addition to the judgment and decree provisions which have been set out, the court also entered a personal judgment against the wife, for the unpaid interest existing as to the 1942 deficiency and penalty, from the date of the assessment thereof to the time that Payne had paid the deficiency and penalty for that year. Judgment was so entered against the wife, because of the fact that she had placed her signature upon the return filed for 1942, below the signature of Payne, and the court held that it therefore constituted a joint return and had the effect of creating a joint and several liability against her as well as Payne, for whatever tax obligation there existed for the year 1942.

On this appeal, taken by both the husband and the wife, the entering of this personal judgment against the wife, for the unpaid interest on the 1942 deficiency and penalty, is first attacked. Relatively, only a small pecuniary amount is involved, but the wife apparently feels that there has been an arbitrary attempt to perpetrate an in-

2. One of the pieces of property was subject to a valid, previous mortgage, and the decree contained provision properly protecting the superior rights of the mortgagee.

justice upon her and that she is entitled to vindication as a matter of principle.

The 1942 return, in its heading, listed Payne's name alone, as the taxpayer for whom the report was being made. It gave his occupation as a physician and showed, as the only item of income and source of tax liability involved, compensation for personal services in the amount of $6406.70. Payne duly signed on the line indicated for "Signature of taxpayer". There were two other blank lines appearing on the form—one to the left of the taxpayer's signature line, indicated as being for "Signature of person (other than taxpayer or agent) preparing return", and another below the taxpayer's signature line, with the indication, "If this is a joint return (not made by agent) it must be signed by both husband and wife". The wife had placed her signature on this line.

She testified that she had no earned or other income as a basis for any signing by her of the 1942 return as a taxpayer. She was a housewife and was not engaged in any outside employment. Nor was she possessed of any other sources of income. She had not placed her signature upon any of the other returns involved and did so on the 1942 return only because "I thought that was where I had to sign because I helped to fill it out". She had no reason and no intent to sign the form as the making of a joint return. And there was at that time no advantage to the husband in having her join in the return.

The Commissioner seems to have so construed the situation throughout the years, for no notice of deficiency had ever been mailed to her either separately or jointly, and no assessment of deficiency had ever been made against her. The complaint in the present suit had alleged that the 1942 return, the same as those for the other years involved, was Payne's individual income tax return. And the prayer of the complaint contained no demand for any relief against her, except in her transferee status. The claiming of personal liability against her for interest on the 1942 deficiency and penalty

assessed against Payne, between the date of the assessment and the time that Payne had made payment of them, was apparently a matter of trial sweep and victory thrust.

The placing of the wife's signature upon the return, at the place where this was done, would, of course, prima facie entitle the situation to be regarded as one of joint return. But there is no statute or rule of law that makes such a situation absolute and conclusive, so that a mistake by a wife, in having signed her husband's tax return to show that she had assisted in the preparation of it but having placed her signature on the wrong line of the form, would be legally incapable of being explained or escaped by her.

The circumstances which have been set out seem to us to be without any rational basis of conviction or persuasion for a finding and conclusion in the situation that the 1942 return was signed by the wife as either an actual or a purported taxpayer. This part of the court's judgment is accordingly, as a matter of fairness, reversed.

In all other respects, however, we think that the judgment and decree are entitled to be affirmed.

■ The wife has contended that there was no basis on which to subject her to transferee liability, because no assessment had ever been made against her under 26 U.S.C.A., Int.Rev.Code of 1939, § 311, and that, without such an assessment against her, no lien could exist upon her title or rights in the property involved, under 26 U.S.C.A., Int. Rev.Code of 1939, § 3670.

But the need for assessment as to a transferee has application only to the making of collection under the summary administrative procedures provided for in § 311 and related sections. These provisions do not preclude the bringing, in appropriate legal and equitable circumstances, of a plenary suit against a transferee to subject property received by him from a taxpayer, to the payment of income taxes owed by the latter, under

the trust fund doctrine. Leighton v. United States, 289 U.S. 506, 53 S.Ct. 719, 77 L.Ed. 1350; 9 Mertens Law of Federal Income Taxation § 53.04.

It is true that the decree here included a declaration that the Government had a lien upon the property involved against the wife as transferee. The property was not sold, however, upon the basis of a foreclosure of such a purported lien, but upon "a reformation of the title" as to each of the three pieces of property, so as to vest all of them in Payne personally, and a foreclosing of the lien which thereupon would become perfected and legally existing against the properties by virtue of the filing of the assessment list as to him in 1949.

 Nullification of the titles standing in the Paynes as tenants by the entirety was necessary under Missouri law in order to make these properties legally lienable and reachable for Payne's individual tax liability. See United States v. Hutcherson, 8 Cir., 188 F.2d 326. And the court also properly set aside the wife's title to the third piece of property as a fraudulent conveyance. In this situation, the question of separate lien as a matter of assessed transferee liability is of no importance.

The titles, as they stood, were duly entitled under Missouri law to be set aside as fraudulent conveyances, in their relation to Payne's tax liability, and to be made to vest in him individually or personally, so that they could be subjected to the satisfying of his tax liability. There was at the time that each of the pieces of property was purchased and title taken in a manner that did not leave them subject to complete legal reach for Payne's individual liabilities, income tax obligations owing from him to the Government, which had not been satisfied and which were sought to be made the subject of judgment against him in this suit.

The Missouri courts have repeatedly held—with the following quotation from Oetting v. Green, 350 Mo. 457, 166 S.W. 2d 548, 550, being typical and here used in example—as follows: "A voluntary conveyance of land is fraudulent in law and void against existing creditors regardless of intent, if it includes so much of the debtor's property so as to leave him without means to pay his debts. Friedel v. Bailey, 329 Mo. 22, 44 S.W.2d 9. The burden shifts to the party accepting the conveyance to show that debtor has retained such means."

 The evidence here amply supports the finding of the trial court that the purchase and placing of title to the various pieces of property, at the time and in the manner in which each was done, rendered Payne insolvent. It also clearly entitled the court to hold that the fraud penalties imposed by the Commissioner were warranted and proper.

 Appellants make the contention, however, that the court had no right to uphold and grant recovery for the fraud penalties in the present action, because the complaint failed to allege that recovery for fraud was being sought and to set out the facts and circumstances constituting the alleged basis for the charge.

Rule 9(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A., dealing with "Pleading Special Matters", requires that, "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity". We should doubt that this Rule has any application to a complaint in a suit to collect assessed tax deficiencies and fraud penalties, of which the taxpayer has administratively been given due notice of determination, assessment, and demand for payment. In any event, however, we are satisfied that it would not preclude the court from entering a judgment upholding such fraud penalties, where, as here, the question of their validity has been fully tried, where it is clear that the taxpayer knew that the question would be and was being made the subject of trial,[3] and where he raised

---

3. As a matter of fact, appellants' answer made express reference to "ad valorem 50% fraud penalty", claimed that they on this ground were entitled to a jury trial, and also spoke of the "burden of proof in fraud cases".

no objection to the sufficiency of the complaint in this respect until after the conclusion of the trial. A copy of the assessment list, showing the amounts of the deficiencies and the penalties of 50% imposed upon these amounts, was attached to and made a part of the complaint, and this was, in our opinion, sufficient in the circumstances, as against the time and form of appellants' attack, to make the judgment properly supported by the pleadings.

Even in the regular administration of Rule 9(b) and the carrying out of its general purpose, it is to be borne in mind that, as stated in 1 Barron and Holtzoff, Federal Practice and Procedure, § 302, p. 593, "the sufficiency of a pleading must largely depend upon the nature of the case, the complexity or simplicity of the transaction or occurrence, the relationship of the parties and the determination of how much circumstantial detail is necessary to give notice to the adverse party and enable him to prepare a responsive pleading".

The final contention made by appellants is that collection of the deficiencies and penalties, or of a part of them, was barred by the statute of limitations. We are unable to see any basis whatsoever for this contention.

Subsection (a) of § 276 of the Internal Revenue Code of 1939, 26 U.S.C.A., provides: "In the case of a false or fraudulent return with intent to evade tax or of a failure to file a return the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time." Subsection (c) further provides: "Where the assessment * * * has been made within the period of limitation properly applicable thereto, such tax may be collected by distraint or by a proceeding in court, but only if begun (1) within six years after the assessment of the tax * * *."

The false or fraudulent returns filed by Payne for the years 1942–1947, with intent to evade taxes, entitled the Commissioner, under § 276(a), to make assessment of deficiencies and fraud penalties for these years at any time, and he did so in 1949. Under § 276(c), he had the right to bring suit to collect the assessed deficiencies and penalties within six years after the assessment, and he did so in 1953. Under Missouri law, a limitation period of 10 years obtained for setting aside the fraudulent conveyances existing as to the properties involved, which had been purchased in 1944, 1945 and 1947. Rogers v. Brown, 61 Mo. 187; V.A.M.S. § 516.010. Thus, neither under federal law, as a suit to collect the assessed deficiencies and penalties, nor under Missouri law, as a suit to set aside the fraudulent conveyances (if state law could have any application) was the action barred.

Appellants purport to see in United States v. Updike, 8 Cir., 32 F.2d 1, affirmed 281 U.S. 489, 50 S.Ct. 367, 74 L. Ed. 984, some support for their contention that the action here is barred, but we are not able to follow their reading of that case nor their argument in respect to its significance. The only part of the opinion that has any materiality here is its holding that the six-year limitation, under § 276(c), upon the Government's right to collect a tax, which has been made the subject of an assessment against the taxpayer, by a proceeding in court, as much precludes the maintenance of an action after that period against a transferee of the taxpayer's assets as one against the taxpayer personally. But that does not help the wife in her position of transferee here, for the suit, both as to her and as to Payne, was commenced within six years after the making of the assessment against Payne.

This is as far as it is necessary to discuss appellants' contentions.

The personal judgment entered against the wife for interest on the 1942 deficiency and penalty is reversed. In all other respects, the judgment and decree are affirmed.

Reversed in part, affirmed in part.