BARTMER AUTOMATIC SELF SERVICE LAUNDRY, INC., ET AL.,[1] PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 64464, 64465, 65229.   Filed November 23, 1960.

---

[1] Proceedings of the following petitioners are consolidated herewith: Helen Comb Smith Thornton, Docket No. 64465, and Marlene J. Smith Clukies, Docket No. 65229.

William J. Becker, Esq., for the petitioners.
Robert A. Roberts, Esq., for the respondent.

OPINION.

VAN FOSSAN, *Judge:* The issue is whether Helen Comb Smith Thornton, or, in the alternative, Bartmer Automatic Self Service Laundry, Inc., is liable as transferee to the extent of the assets (cash and equipment) transferred to either party by Arthur A. Smith, for

the unpaid income tax deficiencies and additions to tax of the transferor.

Respondent concedes that Marlene (petitioner in Docket No. 65229) is not liable as a transferee of Arthur A. Smith, and that there is an overpayment by Marlene in the amount of $196.47, which amount was involuntarily paid by her on October 24, 1956. This concession will be given effect under Rule 50.

Respondent has the burden of proving liability as a transferee, i.e., he must establish all facts necessary to indicate liability, at law or in equity, on the part of the transferee. Sec. 1119, I.R.C. 1939; *Arlington F. Brown*, 24 T.C. 256.

A prima facie case of transferee liability is established if the respondent succeeds in proving, by competent evidence (1) that assets were transferred to the alleged transferee without consideration or for inadequate consideration; (2) that the transferor was insolvent or the transfer left the transferor insolvent or the transfer was a "purely voluntary conveyance conceived and made with the intent of hindering, delaying, and defrauding" the Government; (3) that the assets transferred had value, and what that value was on the date of transfer; and (4) he has made every reasonable effort to collect the sums due.

Petitioner first takes the position that the assessment of liability against her is barred by the statute of limitations.

The parties placed certain stipulated facts in evidence. Some of these facts concerned a stipulation entered into in 1953 that there were deficiencies in tax and additions to tax by reason of *fraud* due from the transferor for the years 1946, 1947, and 1948 in the amount of $36,475.11 (this figure does not include interest). This Court adopted that stipulation by a decision entered on December 8, 1953. That stipulation and its subsequent adoption by this Court constituted a confirmation of the transferor's *fraud*. The Code provides under such circumstances that an assessment may be made at any time against the delinquent taxpayer, i.e., no statute of limitations bars assessment. See secs. 276(a) and 293(b), 1939 Code, and sec. 6501(c), 1954 Code. By the same token, where no statute of limitations bars assessment against the transferor, none bars assessment against the transferee. Sec. 311(b), 1939 Code; sec. 6901, 1954 Code; *Smith* v. *Commissioner*, 249 F. 2d 218 (C.A. 5), affirming a Memorandum Opinion of this Court; *Ruth Halle Rowen*, 18 T.C. 874, reversed on other grounds 215 F. 2d 641 (C.A. 2).

The respondent chose to make a jeopardy assessment against the transferor on June 6, 1951. This action allowed the respondent 6 years to proceed against the transferee, or until June 6, 1957, to take action with respect to petitioner. Sec. 276(c), 1939 Code; sec.

6502, 1954 Code. *George F. Krug*, 30 B.T.A. 1376, affd. 78 F. 2d 57 (C.A. 9); *United States* v. *Updike*, 281 U.S. 489. This period was further extended, however, by reason of the fact that transferor filed a petition in this Court sometime between July 16 and December 10, 1951. Sec. 277 of the 1939 Code; sec. 6503 of the 1954 Code. The decision of this Court was entered on December 8, 1953. Hence, the running of the statute was suspended for approximately 2 years plus the 60 days provided under the section. The total period of limitations was thus extended well into 1959. The notice of transferee liability asserted against petitioner was dated September 18, 1956, and the assessment was made in August 1956. We hold that the actions taken with respect to asserting transferee liability were timely. *Payne* v. *United States*, 247 F. 2d 481 (C.A. 8); *Will T. Caswell*, 36 B.T.A. 816.

Petitioner also argues, with specific and enumerated objections, that respondent has failed to prove a prima facie case of transferee liability.

Our discussion above makes it obvious that the transferor was and is liable for the tax and additions to tax which here form the basis for the assertion of transferee liability. It is equally clear from the record that there are still due and payable from transferor amounts far in excess of the liability sought to be assessed against the transferee in this case. See *Margaret Wilson Baker*, 30 B.T.A. 188, affd. 81 F. 2d 741 (C.A. 3). Petitioner has conceded on brief and the record establishes that the transfer was, in fact, made and made without consideration.

We have found as a fact that when demand for payment of the tax and additions to tax was made, transferor stated that he was unable to pay the assessment. Levies were issued and liens filed on the date of the demand or shortly thereafter. No assets were located. In our view these facts would be sufficient to establish a prima facie case that the transferor was insolvent in July 1951 when he made the transfer to petitioner. Petitioner has offered no evidence to the contrary and we think it rested upon petitioner to go forward with the proof on this point. However, we need not rest our decision on this foundation alone.

The facts of this case fall within the doctrine promulgated in *Meyer Fried*, 25 T.C. 1241; *Louise Noell*, 22 T.C. 1035; and *William Wiener*, 12 T.C. 701. Transferor made the transfer of assets after the jeopardy assessment, after notice and demand and after liens were filed and levies served. He made the transfer after he had stated that he was unable to pay the assessment. He was aware that he had filed false and fraudulent returns and even suggested to his wife that he might go to prison as a result. The various businesses he

owned at one time or another were apparently conducted through straw parties, and the stock, which in fact was his, was concealed by placing record title in the names of others. Respondent requested a financial statement and was refused. We cannot overlook the confidential relationship of the parties and the fact that the transfer was made without consideration, i.e., the "badges of fraud" under Missouri law were present. *Meyer Fried, supra.*

There was no offer of evidence to rebut the prima facie case made by respondent in this respect. Without entering into an analysis of what we consider a settled point, or into a discussion of Missouri law, we hold that the transfer of the cash and equipment or of the stock of the corporation by transferor to petitioner, under the circumstances described, was a purely voluntary conveyance conceived and made with the intent of hindering, delaying, and defrauding the Government in its efforts to collect the taxes and additions to tax owed by the transferor, and was, therefore, void under Missouri law. Mo. Ann. Stat. sec. 428.020 (Vernon). See, also, *Conrad* v. *Diehl*, 344 Mo. 811, 129 S.W. 2d 870; *Oetting* v. *Green*, 350 Mo. 457, 166 S.W. 2d 548; *Godchaux Sugars* v. *Quinn*, 95 S.W. 2d 82. That being so, the respondent need not affirmatively show that the transferor was insolvent at the time the transfer was made. *Meyer Fried, supra; Louise Noell, supra; William Wiener, supra; Leon Papineau*, 28 T.C. 54.

We have set forth at length in our Findings of Fact the search made for transferor's assets, the levies served, and the liens filed. Respondent requested petitioner to render an inventory statement of transferor's estate in her capacity as administratrix, but she failed to do so until 1956. The inventory filed in the Probate Court in that year indicated that no assets were owned by transferor at his death. If these probate proceedings are still pending, respondent is not required to await the outcome since the estate has no assets. Petitioner offered no evidence indicating what assets respondent overlooked or tending to establish how respondent lacked diligence in his efforts. In view of the absence of evidence on the part of petitioner, the devious path taken by the transferor to cloak what assets he possessed, and the lack of cooperation exhibited by both transferor and petitioner, we think that the activities undertaken by respondent are sufficient to establish prima facie that he made every reasonable effort to collect the sums due.

Respondent alleges that $9,914.51 was transferred to petitioner in the form of either cash or equipment. While it is not clear whether assets or stock were transferred, neither party offered proof demonstrating that the value of such stock, if that was what was transferred, was greater or lesser than the value of the underlying assets. We

find, therefore, that if stock was in fact transferred, its value equaled the aggregate value set by us for the individual assets transferred.[3]

The corporate books show on the capital stock ledger sheet a $1,500 credit entry on October 12, 1951. This was the amount of the minimum paid-in capital necessary for the corporation to begin operations. The corporation, in fact, undertook to engage in business. Petitioner admits receipt of the laundry business from transferor. Respondent's agent testified that petitioner admitted being given this amount. Although the transfer took place in July 1951, cash is cash, and therefore it had the same value on October 12, 1951, as in July of that year. Petitioner offered no real explanation for the $1,500 entry inconsistent with respondent's interpretation. Accordingly, we find that respondent has established prima facie that petitioner received $1,500 from transferor in July 1951 either as a cash gift or as part of the assets (paid-in capital) of the corporation which petitioner owned.

The books further show on the same sheet a credit entry of $6,564.51 as of December 31, 1951. There is also an entry as of December 31, 1951, for "equipment" on the equipment ledger sheet in the same amount. Respondent argues that these entries indicate the value of the equipment when transferred in July 1951. Petitioner produced evidence tending to show that the laundry was started in February 1951. It would be a fair inference that the equipment was in use before July 1951. Equipment generally declines in value with the passage of time, depending, of course, on the state of its repair and economic conditions. In July the equipment may have been damaged, out of repair, or otherwise valueless.

We do not consider book entries, dated almost 6 months after the transfer in a context of possible fluctuating values, as sufficient evidence to fix the value of this equipment on the date of transfer. On the other hand, petitioner admittedly received the equipment (or stock) from the transferor without consideration. She testified that its value was somewhere in the neighborhood of $3,500 to $4,000 when she received it. Exercising our best judgment, and bearing heavily against the respondent, on whom the burden of proof of such value rests, we have determined that the value of the equipment on the transfer date was $4,000.

The sum of $600 was entered upon the books as a loan from petitioner to the corporation. In denying that she received the money from transferor, petitioner testified that this amount came from her personal funds earned as a waitress. The sum is not so great that reasonably she could not have earned and saved this amount. Nor is is unreasonable that she should advance money to a corporation which

---

[3] It appears more likely that assets rather than stock were transferred in July 1952, in view of the September date on the stock certificates.

she owned and managed. Accordingly, we have found that the $600 represented petitioner's personal funds and that she was not in receipt of this amount from transferor.

The capital stock ledger sheet shows an entry of $1,250 on December 31, 1951, the reference column containing the word "contra." Respondent alleges that this amount represented assets received by petitioner. No explanation of this book entry or what it represented was given by respondent. We hold that respondent has failed to show that the entry represented anything of value received by the petitioner from the transferor. See *Arlington F. Brown, supra.*

A point was raised in the course of the testimony that the laundry equipment had been sold subsequent to the transfer in July 1951, apparently at a lesser value than here asserted by respondent. The fact that the transferee sold the assets is immaterial to our considerations. The price at which she may have sold the equipment is not the measure of liability. Liability is measured by the value of the property that was transferred to her. See *Estate of Geroge L. Cury,* 23 T.C. 305, 339.

In view of the foregoing discussion and petitioner's admission, it is apparent that the corporation is not liable as a transferee, as contended in the alternative by respondent. We find that the Bartmer Automatic Self Service Laundry, Inc. (petitioner in Docket No. 64464), made an overpayment in the amount of $1,103.64. We hold that petitioner is liable, as transferee of Arthur A. Smith, to the extent of $5,500 ($4,000 plus $1,500), plus interest thereon as provided by law,[4] this being the value of the assets transferred to her in July 1951 without consideration.

*Decisions will be entered under Rule 50.*

---

[4] See *Voss* v. *Wiseman,* 234 F. 2d 237 (C.A. 10).

