CONLEY H. CAVANAUGH, TRANSFEREE, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Cavanaugh v. Commissioner
Docket No. 30374-89
United States Tax Court
T.C. Memo 1991-407; 1991 Tax Ct. Memo LEXIS 440; 62 T.C.M. (CCH) 554; T.C.M. (RIA) 91407; August 19, 1991, Filed *440 Decision will be entered under Rule 155. Paul A. Frederiksen, for the petitioner. Mark S. Heroux, for the respondent. SCOTT, Judge. SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION Respondent determined that petitioner was liable for $ 47,282.00 as transferee of the assets of his sister, Yvonne W. Cavanaugh, for unpaid taxes and additions to tax and accrued interest as provided by law of Yvonne W. Cavanaugh for the taxable years 1974 through 1978. The statement attached to the notice of transferee liability showed the unpaid taxes and additions to tax of Yvonne W. Cavanaugh for which petitioner was determined to be liable as follows: Additions to Tax
Year
Tax
Sec. 6651 [1]
Sec. 6653
Sec. 6654
1974
$ 7,757
$   -0-
$ 3,879
$ 236
1975
7,712
-0-
3,856
333
1976
5,908
-0-
2,954
220
1977
5,804
1,451
290
206
1978
6,676
-0-
-0- -0-
*441 Respondent in his amended answer conceded that Yvonne W. Cavanaugh was not liable for the additions to tax for fraud under section 6653(b) for 1974 through 1976, but alleged that she was liable for additions to tax for those years and the year 1978 as shown below: Additions to Tax
Year
Tax
Sec. 6651(a)
Sec. 6653(a)
Sec. 6654(a)
1974
$ 7,757
$ 1,939
$ 387.85
$ -0-
1975
7,712
1,928
385.60
-0-
1976
5,908
1,477
295.40
-0-
1978
6,497
1,624
325.00
207
The issues for decision are: (1) Whether petitioner is liable as a transferee for the unpaid income taxes, additions to tax, and interest as provided by law of his sister Yvonne W. Cavanaugh for the taxable years 1974 through 1978; (2) whether respondent is barred by the statute of limitations or the doctrines of estoppel or laches from determining transferee liability against petitioner; (3) whether Yvonne W. Cavanaugh was liable for the additions to tax under sections 6651(a)(1) and 6653(a) for the taxable years 1974, 1975, 1976, and 1978; and (4) whether Yvonne W. Cavanaugh was liable for the additions to tax under section 6654(a) for the taxable year 1978. FINDINGS OF FACT
*442 Some of the facts have been stipulated and are found accordingly. Petitioner resided in Denver, Colorado, at the time of the filing of the petition in this case. Yvonne W. Cavanaugh (now deceased) was petitioner's sister. For the calendar years 1974, 1975, and 1976, Yvonne W. Cavanaugh (Ms. Cavanaugh) filed Forms 1040 with her name, address and Social Security number shown thereon. Her 1974 and 1975 Forms 1040 listed her occupation as "Defender of American Right to Liberty." The 1976 Form 1040 lists no occupation. On the Forms 1040 for 1974 and 1975 "none" was shown for wages, salaries, etc., and dividends; adjusted gross income was shown as "Under 740" with a "*" next to the notations; and "**" appeared in the column for interest on both Forms 1040. Both forms contain a note typed in the margin stating that "Constitutional dollar is here used with the statutory definition of 412.5 grains of standard silver, or the gold equivalent as per Coinage Act of 1792 and later coinage acts." Another notation typed on the form refers to a willingness to refile if "you can show me how to do so without waiving my Constitutional rights." No figures are shown on the Form 1040 for 1976, but *443 in the space for reporting income and other items appear "**." The "**" refer to the statement "Specific objection to question on grounds of 1st, 4th, 5th, 7th, 8th, 9th, 10th, & 13th Amendments to the US Constitution." Other notations on the Form 1040 for 1976 refer to an 11-page petition for "Redress of Grievances" and questioning the term "U.S. Dollars." Ms. Cavanaugh did not file a Federal income tax return for either of the years 1977 or 1978. Respondent on October 26, 1984, mailed a notice of deficiency to Ms. Cavanaugh determining deficiencies in her income tax and additions to tax for each of the years 1974, 1975, and 1976. She did not seek a redetermination of these deficiencies. The deficiencies in income tax and the additions to tax for the taxable years 1974, 1975, and 1976 were assessed on July 1, 1985. On January 5, 1987, respondent mailed a notice of deficiency to Ms. Cavanaugh determining a deficiency and additions to tax for each of the years 1977 and 1978. Ms. Cavanaugh did not seek a redetermination of these deficiencies and the deficiencies in income tax and additions to tax for the taxable years 1977 and 1978 were assessed on June 8, 1987. In early 1981 *444 Ms. Cavanaugh was charged with violation of section 7203, was convicted under section 7203 of willful failure to file income tax returns for the years 1974, 1975, and 1976, and on November 11, 1981, was sentenced to a prison term and fined. Ms. Cavanaugh's conviction was affirmed by the Circuit Court of Appeals for the Tenth Circuit. Except for two payments totaling $ 800 and applied to the 1974 taxable year, no part of the deficiencies or additions to tax due from Ms. Cavanaugh for the years 1974 through 1978 has been paid. Petitioner, Ms. Cavanaugh, and their mother lived in a house owned by their mother from before 1970 throughout the years here involved. A mortgage had been placed on the house owned by their mother by petitioner and Ms. Cavanaugh in order to make a downpayment on a piece of property they bought and owned jointly at 1710 Willow. Petitioner told Ms. Cavanaugh that she could take the rent money on 1710 Willow if she paid the amount due on the mortgage on that property and on the mortgage on their mother's home. Ms. Cavanaugh was also to pay the mortgage on the property at 280 South Depew, Lakewood, Colorado, which she owned jointly with her mother. Petitioner *445 and Ms. Cavanaugh were to split the household costs equally and their mother was to do most of the housekeeping. Later, after their mother became ill, Ms. Cavanaugh took over the housekeeping. Petitioner at times paid some of the mortgages Ms. Cavanaugh was to pay and more than his one-half of the household expenses. He never asked Ms. Cavanaugh to reimburse him for any of these amounts. He had no notes from her for the amounts and never asked for repayment. In fact he never added up the amount he considered she owed him until shortly before this trial. In 1978 an investigation of Ms. Cavanaugh's tax liability and failure to file returns was begun. On March 6, 1979, Ms. Cavanaugh quitclaimed her interest in properties located at 1725 Xanthia Street, Denver, Colorado, and 1710 Willow Street, Denver, Colorado, to petitioner for "$ 1.00 and other considerations." On March 7, 1979, Ms. Cavanaugh quitclaimed her interest in properties located at 280 and 290 South Depew Street, Lakewood, Colorado, to petitioner for "$ 1.00 and other considerations." The fair market value of the above four properties, as of the dates of the transfers and after consideration of prior encumbrances, *446 was $ 51,637. At the time of the transfer of the properties at 280 and 290 South Depew Street, Ms. Cavanaugh told petitioner she was in arrears on the mortgage payments and foreclosure on the properties might occur. From 1970 until sometime around 1983 Ms. Cavanaugh operated a nursery school located at 280 South Depew Street, Lakewood, Colorado. Subsequent to the March 7, 1979, property transfer, Ms. Cavanaugh made rental payments to petitioner for use of the property. Petitioner reported $ 1,724.64, $ 2,460, $ 2,460, $ 2,460, $ 2,460, and $ 868 as rental receipts from that property in 1979, 1980, 1981, 1982, 1983, and 1984, respectively. Respondent in his notice of transferee liability to petitioner states that records available to him showed the transfer of four properties to petitioner by Ms. Cavanaugh and that unpaid income taxes and additions to tax were due from Ms. Cavanaugh. OPINION Before reaching the major issue in this case we will comment briefly on respondent's contention that issues raised in petitioner's amended petition are not properly before the Court. These issues were raised at the trial and petitioner was allowed to proceed with trial of the issues and *447 allowed 30 days after conclusion of the trial to reduce his amended petition to writing. The written amended petition was filed late. Leave to file late was granted by the Court. The granting of leave to file a pleading late is in the Court's discretion. Respondent has not argued any abuse of discretion by the Court or that he was in any way harmed by the late filing of the amended petition. His argument with respect to the late filing of the amended petition is totally without merit. Section 6901 provides that the liability at law or in equity of a transferee of property shall, except as otherwise provided, be assessed, paid, and collected in the same manner as the taxes with respect to which the liabilities were incurred. The substantive liability of the transferee is determined under State law. Commissioner v. Stern, 357 U.S. 39, 45, 2 L. Ed. 2d 1126, 78 S. Ct. 1047 (1958); Adams v. Commissioner, 70 T.C. 373, 389 (1978). A transferee may be liable for the taxes owed by the transferor for years prior to the transfer to the extent of the value of the property received from the transferor, even though the tax liability of the transferor was unknown at the time of the *448 transfer. Swinks v. Commissioner, 51 T.C. 13, 17 (1968). In this case the parties agree that the law of Colorado is the law that governs whether petitioner is liable as a transferee of Ms. Cavanaugh at law or in equity. Section 6902(a) provides that in proceedings before this Court the burden is on respondent to show that a petitioner is liable as a transferee of property of another taxpayer but not to show that the taxpayer was liable for the tax. See also Rule 142(d). To satisfy his burden of proof, respondent must establish (1) that assets were transferred to the alleged transferee for no consideration or an inadequate consideration; (2) that the transferor was insolvent or the transfer of assets left the transferor insolvent or the transfer was "with the intent of hindering, delaying, and defrauding" the Government; (3) that the assets transferred had value and the amount of that value; and (4) that he has proceeded against the transferor or that efforts to collect from the transferor would be a useless gesture. Bartmer Automatic Self Service Laundry, Inc. v. Commissioner, 35 T.C. 317, 322 (1960). Here the recited consideration for *449 the transfer of the properties was $ 1.00 and respondent has shown that at the time of the transfer no money or other property was transferred by petitioner to Ms. Cavanaugh for the property transferred. Petitioner contends that the consideration for the transfer was cancellation of indebtedness. Petitioner claims that, prior to the dates of the transfers of the properties, he had loaned his sister approximately $ 70,000. He contends that the $ 70,000 was composed of $ 24,000 in mortgage payments on the properties, $ 1,000 from a car he sold to her, $ 2,000 charged on petitioner's credit cards, amounts expended for household expenses, and the cost of installation of a furnace (no estimate of value given). He argues that the transfers of the properties were made to repay him for these loans. The parties agree that the fair market value of the properties transferred as of the dates of the transfers and after consideration of prior encumbrances was $ 51,637. Petitioner argues that since the loans which were forgiven for the properties transferred amounted to $ 70,000, the transfers were made for full and adequate consideration. Based on the facts in this record we conclude that *450 whatever amounts petitioner paid as mortgages on the properties transferred to him by Ms. Cavanaugh and amounts paid by petitioner for household expenses for petitioner, Ms. Cavanaugh, and their mother and any other incidental amounts paid by petitioner, which may in some way have benefited Ms. Cavanaugh, were not loans by petitioner to her. One of the properties on which petitioner testified he made mortgage payments was owned jointly by petitioner and Ms. Cavanaugh and another by his mother and Ms. Cavanaugh. Petitioner made no showing of why the obligation to pay the mortgages was that of Ms. Cavanaugh or that he had any understanding she would reimburse him for any mortgage payments he made. The payments of household expenses made by petitioner, which from petitioner's testimony seem excessive, were for the home in which petitioner, Ms. Cavanaugh, and their mother lived. Based on this record we conclude that petitioner did not expect Ms. Cavanaugh to make any repayment of these amounts and Ms. Cavanaugh had not agreed to make any such repayment. At the time of transfer of two of the properties, Ms. Cavanaugh stated that she was transferring her properties to petitioner because *451 she could not meet her financial obligations and wanted to avoid foreclosure. All transfers were made after an investigation of Ms. Cavanaugh's income tax liabilities for the years 1974 through 1976 had begun. We conclude from the facts of record that the transfers by Ms. Cavanaugh to her brother were not intended to repay loans, if any, to her from her brother. There were no notes evidencing any loans by petitioner to Ms. Cavanaugh and petitioner had not made any attempts to obtain repayment of any loans. In fact, he made no determination of how much he claimed Ms. Cavanaugh owed him until he was preparing for the trial of this case. Petitioner stated that he would have continued to assist Ms. Cavanaugh financially regardless of whether she had transferred the properties to him. Under Colorado's fraudulent conveyance statute, any conveyance "made with the intent to hinder, delay, or defraud creditors" is void. Colo. Rev. Stat. sec. 38-10-117 (1973). A conveyance made with the requisite intent is void as to both present and future creditors. Fish v. East, 114 F.2d 177, 182-183 (10th Cir. 1940). In United States v. Morgan, 554 F. Supp. 582, 585 (D. Colo. 1982), *452 the court found that where the transfer is to a related party, the fact that the transferor did not intend to defraud his creditors will not defeat a suit to void a transfer as fraudulent. Where the transfer is to a related party or without consideration, if the transferor's intent was merely to hinder or to delay the payment of his creditors, the transfer will be voided. United States v. Morgan, supra at 585. Respondent argues that the transfers were intended to hinder payment of taxes to the Internal Revenue Service and payment of Ms. Cavanaugh's other creditors since by quitclaiming the properties to her brother she would make it more difficult for creditors to foreclose on the properties. Petitioner argues that Ms. Cavanaugh did not intend to hinder her creditors by transferring the properties, but intended to repay petitioner what she owed him. As discussed above, we do not believe Ms. Cavanaugh had any indebtedness to petitioner, and if she did we do not believe that repayment of her debt to petitioner was the reason for the transfers. Petitioner testified that, before Ms. Cavanaugh transferred the properties to him, he had been assisting her financially *453 and knew she was having trouble meeting her financial obligations. When she transferred two of the properties to him, she told him she was in default on payments and wanted to avoid foreclosure. From the record as a whole we conclude that Ms. Cavanaugh intended to hinder her creditors by transferring the properties to petitioner. Respondent argues that he has also shown that, by reason of the transfers of properties by Ms. Cavanaugh to petitioner, Ms. Cavanaugh was rendered insolvent. Petitioner argues that Ms. Cavanaugh was insolvent before the transfers but was solvent following the transfers as a result of her relief from the mortgage obligations due on the properties transferred. We note in passing that since Ms. Cavanaugh's transfer to petitioner was by quitclaim deed, any personal liability she had on the mortgages prior to the transfer remained unchanged. Under Colorado law, whether the transferor is insolvent is a question of fact, based on several factors which include: whether a debtor, in the ordinary course of his business, is able to pay his debts with money or by application of his other assets; whether the debtor has so little property left after the alleged fraudulent *454 conveyance that his creditors' ability to collect their debts through judicial process is impaired; and the type of business in which the debtor is engaged. Love v. Olson, 645 P.2d 861, 864 (Colo. App. 1982). Before the transfers, Ms. Cavanaugh had income from her nursery school business and owned a car valued at approximately $ 100 and properties (less encumbrances) of a value of $ 51,637. Subsequent to the transfer, Ms. Cavanaugh had income from the nursery school business and owned the car. One of the properties Ms. Cavanaugh transferred was the property on which her nursery school business was operated. Before the transfer, the mortgage payment was approximately $ 1,800 per year. After the transfer, Ms. Cavanaugh paid petitioner $ 1,724.64, $ 2,460, $ 2,460, $ 2,460, $ 2,460, and $ 868 as rental income in 1979, 1980, 1981, 1982, 1983, and 1984, respectively. In all years except 1979 and 1984, she paid more in rent than she would have paid on the mortgage. That the transfer did not improve her financial position is made even clearer by the fact that before the transfer she often did not make the mortgage payment herself, but after the transfer she paid *455 rent to petitioner. Ms. Cavanaugh's financial obligations increased as a result of the transfer of the property on which the nursery school was operated. In addition, as a result of the transfers, her net worth decreased by $ 51,637. Also, a net worth statement was prepared by one of respondent's agents. This agent testified that this statement showed all assets of Ms. Cavanaugh he could locate. The statement showed that after the transfer Ms. Cavanaugh was insolvent. Petitioner questions some of the items, but adjusting for those questioned items would not change the result of the computation which shows that Ms. Cavanaugh was insolvent after the transfers. The parties have stipulated that the fair market value of the above four properties transferred, as of the dates of the transfers and after consideration of prior encumbrances, was $ 51,637. Respondent's revenue officer assigned to collect the tax liability of Ms. Cavanaugh testified that he had conducted an investigation to locate any assets that Ms. Cavanaugh might own. In reviewing the public record, the only asset he located was a 1973 Oldsmobile. Attempts to locate wage sources of Ms. Cavanaugh were unsuccessful. *456 Because he was unable to locate any assets of value owned by Ms. Cavanaugh he concluded that to proceed against her would be a useless gesture. Based on this record we conclude that respondent has shown that petitioner is a transferee of properties of Ms. Cavanaugh and is liable for her unpaid taxes, additions thereto, and interest as provided by law to the extent of the value of the property transferred plus interest as provided by law from the date of the transfer. Petitioner has failed to present credible evidence to refute respondent's showing. See Gatto v. Commissioner, 20 T.C. 830, 834 (1953). Accordingly, petitioner is liable as a transferee of properties of Ms. Cavanaugh. Section 6901(c) provides: The period of limitations for assessment of any such liability of a transferee or a fiduciary shall be as follows: (1) Initial Transferee. -- In the case of the liability of an initial transferee, within 1 year after the expiration of the period of limitation for assessment against the transferor;
Petitioner argues that the transferor filed valid, timely returns for the years 1974, 1975, and 1976 and, therefore, the period of limitations *457 for assessment of a deficiency for those years against Ms. Cavanaugh expired more than 1 year prior to the mailing to him of the notice of transferee liability. Respondent argues that the period of limitations for assessment of tax against petitioner has not expired for the years 1974, 1975, and 1976 since the Forms 1040 filed by her were not valid income tax returns. This record shows that Ms. Cavanaugh was convicted under section 7203 for willful failure to file returns for 1974, 1975, 1976 and that her conviction was affirmed by the Circuit Court of Appeals for the Tenth Circuit. Therefore it has been determined in a prior case that Ms. Cavanaugh did not file Federal income tax returns for the taxable years 1974, 1975, and 1976. Also the record here shows that the Forms 1040 filed by petitioner for 1974, 1975, and 1976 were comparable to those held not to be returns in United States v. Brown, 600 F.2d 248, 251 (10th Cir. 1979) and United States v. Porth, 426 F.2d 519, 523 (10th Cir. 1970). An appeal in this case would be to the Tenth Circuit. Petitioner argues that Ms. Cavanaugh filed valid returns for the taxable years 1977 and 1978, *458 and therefore the period of limitations for assessment of deficiencies for those years against Ms. Cavanaugh expired more than 1 year before respondent mailed a notice of transferee liability to him. Petitioner contends that respondent has the burden of establishing that no tax returns were filed by Ms. Cavanaugh for the years 1977 and 1978 and that respondent has failed to carry his burden. Respondent has shown by certified copies of his records that no returns were filed by Ms. Cavanaugh for 1977 and 1978 and petitioner has offered no evidence to rebut this showing. When no income tax return has been filed by a taxpayer, the tax may be assessed at any time. Sec. 6501(c)(3). Where no statute of limitations bars assessment against the transferor, none bars assessment against the transferee. Accordingly, the period of limitations for assessment of transferee liability based on Ms. Cavanaugh's liabilities for the taxable years 1974 through 1978 had not expired when the notice of transferee liability was mailed to petitioner. Petitioner argues that respondent should be estopped from determining transferee liability because of statements contained in the Form 3031, Report of Investigation *459 of Transferee Liability (report), prepared by his agent. In the report, the agent states that the date of expiration of the statutory period for assessment against the transferee is February 15, 1988, for the 1974, 1975, and 1976 taxable years and July 22, 1989, for the 1977 and 1978 taxable years. The doctrine of equitable estoppel is applied against the Government only with the utmost caution and restraint. Kronish v. Commissioner, 90 T.C. 684, 695 (1988). The elements that must be shown before the doctrine will be applied include: (1) The making of a false representation or a wrongful misleading silence by the person against whom estoppel is claimed; (2) the error must be in a statement of fact and not in an opinion or a statement of law; (3) the person claiming the benefits of estoppel must be ignorant of the true facts; and (4) he must be adversely affected by the acts or statements of the person against whom an estoppel is claimed. Estate of Emerson v. Commissioner, 67 T.C. 612, 617-618 (1977); Underwood v. Commissioner, 63 T.C. 468, 477-478 (1975), affd. 535 F.2d 309 (5th Cir. 1976). It is clear *460 that petitioner has not shown that the elements of estoppel are present. The statements made by the agent in the report with respect to the period of limitations are statements of opinion or of law. Respondent is not bound by misstatements of his agents regarding applicable law. Neri v. Commissioner, 54 T.C. 767, 772 (1970). Petitioner argues that because 10 years have elapsed from the time of the transfer and the transferor has died, respondent should be barred from determining transferee liability by the doctrine of laches. Laches is an equitable doctrine which may be applied to deny relief to a party whose unconscionable delay in enforcing his rights has prejudiced the party against whom a claim is asserted. United States v. Excellair, Inc., 637 F. Supp. 1377, 1385 (D. Colo. 1986); Bacon v. Industrial Claim Appeals Office of the State of Colorado, 746 P.2d 74, 75-76 (Colo. App. 1987). Petitioner has failed to show that respondent's delay was unconscionable and how he was prejudiced by any such delay. Accordingly, we find the doctrine of laches inapplicable to the present facts. In the notice of transferee liability, *461 respondent asserted, with respect to the transferor's 1974, 1975, and 1976 taxable years, section 6653(b) additions to tax. With respect to the transferor's 1978 taxable year, respondent did not assert any additions to tax in the notice of transferee liability. In his amended answer, respondent conceded the section 6653(b) addition to tax and asserted section 6651 and section 6653(a) additions to tax for the taxable years 1974, 1975, 1976, and 1978. He also asserted a section 6654(a) addition to tax for the taxable year 1978. Since these additions to tax are matters raised in his amended answer, the burden is on respondent to show that these additions to tax are proper. Rule 142(a). Section 6651(a)(1) imposes an addition to tax in the case of failure to file an income tax return. As discussed above, respondent has shown that the Forms 1040 filed by the transferor for the years 1974 through 1976 did not constitute tax returns and that no return was filed for the 1978 taxable year. The addition to tax does not apply if the failure to timely file was due to reasonable cause and not willful neglect. Sec. 6651(a)(1). The evidence clearly shows that the failure of Ms. Cavanaugh *462 to file her returns for 1974 through 1976 and for 1978 was not due to reasonable cause. Accordingly, imposition of the addition to tax under section 6651(a)(1) is proper. See Beard v. Commissioner, 82 T.C. 766, 780 (1984), affd. 793 F.2d 139 (6th Cir. 1986). Section 6653(a) provides that if any part of any underpayment is due to negligence or intentional disregard of rules or regulations, a tax equal to 5 percent of the underpayment will be added. For purposes of section 6653(a) negligence is defined as a lack of due care or failure to do that which a reasonable and prudent person would do under the circumstances. Zmuda v. Commissioner, 731 F.2d 1417, 1422 (9th Cir. 1984), affg. 79 T.C. 714 (1982). Ms. Cavanaugh willfully failed to file proper income tax returns for 1974 through 1976 and negligently failed to file a return for 1978. Respondent has shown that Ms. Cavanaugh did not act like a reasonable and prudent person with respect to her tax liabilities. Accordingly, imposition of the section 6653(a) addition to tax is proper for the years 1974, 1975, 1976, and 1978. See Beard v. Commissioner, supra. *463 Respondent in his amended answer asserted an addition to tax under section 6654 for the failure to pay estimated income tax for the 1978 taxable year. Section 6654(a) provides for an addition to tax in the case of any underpayment of estimated tax by an individual. If a taxpayer falls within its provisions, this addition to tax is mandatory, absent one of the computational exceptions set forth in section 6654(d), none of which apply here; there is no provision relating to reasonable cause or lack of willful neglect. Estate of Ruben v. Commissioner, 33 T.C. 1071 (1960). Ms. Cavanaugh worked in her nursery school business during 1978. The parties have stipulated that, except for two payments totaling $ 800, applied to the 1974 taxable year, no part of the deficiencies or additions to tax due from Ms. Cavanaugh have been paid. Accordingly, imposition of the additions to tax under section 6654 is proper. Decision will be entered under Rule 155. Footnotes
1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code as amended and in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩