FRED STAFFILINO, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Staffilino v. Commissioner
Docket No. 5020-91
United States Tax Court
T.C. Memo 1992-706; 1992 Tax Ct. Memo LEXIS 789; 64 T.C.M. (CCH) 1504; December 15, 1992, Filed *789 Decision will be entered under Rule 155. For Petitioner: Robert E. Giffin. For Respondent: Jeffry J. Erney. WRIGHT
WRIGHT
MEMORANDUM FINDINGS OF FACT AND OPINION WRIGHT, Judge: Respondent determined the following deficiencies in and additions to the Federal income tax for taxable years 1984 and 1985 of Staff Outdoor Advertising, Inc., petitioner's wholly owned corporation: Additions to tax
Tax
Year
Deficiency
Sec.6651(a)
Employment Tax
1985
$   5,583.60
$     88.75
Income Tax
1984
1,888.00
808.77
Income Tax
1985
81,087.00
36,403.94
Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. After concessions by both parties, which will be given effect in the Rule 155 computation, the issues for decision are: (1) Whether Staff Outdoor Advertising, Inc., is entitled to carryback an alleged net operating loss from taxable year 1988 to taxable year 1985. We hold that it is not. (2) Whether petitioner is liable as a transferee of the assets of Staff Outdoor Advertising, Inc., for its deficiencies in income tax and *790 additions to tax for the taxable years 1984 and 1985. We hold that he is. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioner resided in Steubenville, Ohio, at the time he filed the petition in this case. During the years in issue, petitioner was married and filed joint Federal income tax returns with his spouse for taxable years 1984 through 1989. Transfers
In November 1981, Staff Outdoor Advertising, Inc. (hereinafter transferor), was organized under the laws of Ohio, and petitioner was its sole shareholder and officer. In February 1985, the transferor entered into a contract to sell its assets to Lamar Advertising of Ohio, Inc. (hereinafter Lamar), for the amount of $ 550,000. Pursuant to this contract, the transferor transferred its assets to Lamar in March 1985 and received $ 550,000. Also in March 1985, the transferor transferred to petitioner $ 400,000 in cash, which was placed in a certificate of deposit in petitioner's name, and $ 100,000 in cash to petitioner as alleged compensation. Contained in the contract for sale was a *791 10-year noncompetition agreement. The transferor has been inactive since March 1985 and failed to timely file its 1984 and 1985 Federal corporate income tax returns, Forms 1120. The corporate charter of the transferor was revoked in December 1988 for failure to pay the State of Ohio franchise fee and has never been reinstated. Investigation and the 1984 and 1985 Corporate Income Tax Returns
In January 1987, an internal revenue officer, Emerson McGrew, began an investigation into the delinquency of the 1984 and 1985 corporate tax returns. On January 22, 1987, petitioner filed the 1984 Federal corporate tax return which was approximately 2 years late, and the tax was unpaid. On this return, gross receipts were claimed, $ 60,000 was claimed as a deduction for compensation paid to officers, and real property and loans to stockholders were listed on the balance sheet as assets of the corporation. On petitioner's 1984 joint Federal income tax return, there was zero compensation claimed by petitioner from the transferor. On February 3, 1987, Form 433-B, Collection Information Statement for Businesses, was filled out by the revenue officer. The purpose of this form is to secure *792 information regarding the assets and liabilities of a business as well as its income and expenses. The procedure used in filling out this form entails asking the taxpayer questions as they appear on the form and then recording his or her responses. After the form is complete, the taxpayer places his or her signature on the document signing under the penalties for perjury. Question 12 on this form asks for a brief description and type of ownership of any real property owned by the corporation. In response to this question, petitioner stated "none". The revenue officer asked petitioner about the inconsistency of that answer with what he claimed on the 1984 Form 1120 in which real property was listed on the balance sheet. Petitioner stated that there was real property in his and his wife's names that he had purchased on a land contract and that it was not an asset of the corporation. Respondent searched the county records and determined that the corporation owned no real estate. It is unclear from the record when this search was performed. Question 15 asks to list accounts/notes receivable including loans to stockholders, officers, and partners. In response to this question, *793 petitioner stated "none". This statement was again inconsistent with what was claimed on the 1984 Form 1120. When asked by the revenue officer regarding this inconsistency, petitioner stated that he and the corporation were synonymous, and, therefore it was his money to use. At the bottom of this form, petitioner stated "all assets were sold during March 1985 and has been basically inactive since that time. Corporation may reactivate." Also on February 3, 1987, the revenue officer filled out a Form 4180, Report of Interview Held With Persons Relative to Recommendation of 100 Percent Penalty Assessments. Petitioner was asked in question 9 about the present status of the corporation. Petitioner stated that it was existing but inactive. When asked in question 12 to list any assets of the corporation and where they were located, petitioner responded "no" indicating that there were none. Question 14 asks if there was any property of the corporation sold or transferred for less than full consideration since accrual of the tax liability. Petitioner responded by stating that $ 400,000 of the proceeds received from the sale of the assets were placed into a personal certificate of *794 deposit and were shown on the transferor's balance sheet as a receivable of the corporation. Petitioner signed this document. Petitioner was asked by the revenue officer if he intended to repay the $ 400,000, and petitioner stated that he was the corporation, he was the sole stockholder, and there was no need to repay the money because it was his. On February 2, 1987, petitioner was served with a Notice of Tax Levy, and no funds were received from that notice. The proceeds from the sale of the assets to Lamar were used and pledged to purchase another business. On March 9, 1987, petitioner filed the transferor's 1985 Federal corporate income tax return which was approximately 1 year late, and the tax was unpaid. On this return, gross receipts were claimed, $ 100,000 was claimed as a deduction for compensation paid to officers, and $ 400,000 listed as loans to stockholders and real property were listed on the balance sheet as assets of the corporation. There was no loan agreement, promise to pay, or any type of installment agreement between petitioner and the transferor in which to effectuate repayment of the $ 400,000. Mr. Jack Kelly, an accountant who began working for petitioner *795 in 1990 and who prepared the corporate tax returns for the taxable years 1986 through 1989, stated that the pay agreement was to be petitioner's salary of $ 100,000 a year plus the interest. On petitioner's joint Federal income tax return for 1985, $ 100,000 compensation was claimed by petitioner from the transferor. Bankruptcy Petition
On June 9, 1988, petitioner and his wife filed a voluntary joint petition under chapter 11 of the Bankruptcy Code and the proceeding was dismissed on October 13, 1989. During the course of the bankruptcy proceedings, petitioner and his wife were required to fill out a Statement of All Liabilities of Debtor. Petitioner's total debts exceeded $ 1,200,000; however, it is unclear from the record the extent to which these debts may relate to the operations of the transferor. No mention was made on this statement regarding the $ 400,000 transfer which was claimed as a loan to shareholders on the transferor's delinquent Federal corporate tax returns for the taxable years 1985 through 1989. In December 1990, a Notice of Liability was issued to petitioner. At this time, no corporate income tax returns had been filed for the taxable years 1986 *796 through 1989. 1986 Through 1989 Federal Corporate Income Tax Returns
On January 22, 1991, petitioner filed the 1986 corporate tax return, and on March 18, 1991, petitioner filed the 1987, 1988, and 1989 corporate income tax returns. On the 1986 corporate tax return, zero gross receipts were claimed, $ 100,000 was claimed as a deduction for compensation paid to petitioner, there was listed a decrease in the amount of loans to stockholders from $ 400,000 to $ 253,845, and real property was listed on the balance sheet as an asset of the corporation. On petitioner's joint income tax return for 1986, petitioner claimed zero compensation from the transferor. On the 1987 corporate tax return, zero gross receipts were claimed, $ 100,000 was claimed as a deduction for compensation paid to petitioner, and there was listed a decrease in the amount of the loan to shareholders from $ 253,845 to $ 186,923. On Form 4797, Gains and Losses From Sales or Exchanges of Assets Used in a Trade or Business for 1987, filed with the 1987 corporate tax return, the sale of a section 1245 building was claimed which was described as being acquired in 1979 with $ 20,032 taken in depreciation since the *797 acquisition, and which was sold in 1987 for $ 50,000. In March 1979, there was filed in Columbiana County, Ohio, a land installment contract in which petitioner and his wife were named as vendees of real property described as 533 Wells Avenue, Wellsville, Ohio. The above-mentioned 533 Wells Avenue property was depreciated on petitioner's joint tax returns and disposed of in 1987. On the 1988 corporate income tax return, zero gross receipts were claimed, $ 100,000 was claimed as a deduction for compensation paid to petitioner, there was listed a decrease in the amount claimed as loans to stockholders from $ 186,923 to $ 102,243, and no real property was listed on the balance sheet. On petitioner's joint Federal income tax return for 1988, zero compensation was claimed by petitioner from the transferor. On June 24, 1991, petitioner filed an amended Federal corporate income tax return on behalf of the corporation for taxable year ending in 1985 claiming a net operating loss from taxable year 1988 to be carried back to taxable year 1985. [1]
*798 On the 1989 corporate tax return, zero gross receipts were claimed, $ 100,000 was claimed as a deduction for compensation paid to petitioner, there was listed a decrease in the amount of loans to stockholders from $ 102,243 to $ 2,248, and no real property was listed on the balance sheet. On petitioner's joint Federal income tax return for 1989, petitioner claimed zero compensation from the transferor. OPINION Issue 1. The 1988 Carryback
The first issue for our consideration is whether the corporation is entitled to carryback an alleged 1988 net operating loss to taxable year 1985. Petitioner argues that the 1985 taxable income of the transferor should be reduced by the amount of the alleged 1988 net operating loss carryback, and these losses, if carried back, would eliminate any tax liability owed by the transferor upon the sale of its assets in 1985. As discussed below, however, petitioner has not offered sufficient evidence to show that a net operating loss was sustained by the transferor in 1988. The Form 1120X amending the 1985 corporate tax return to reflect the 1988 net operating loss shows basically two changes: (1) An increase in total income to reflect interest *799 allegedly earned by the transferor on the loan to its shareholder, and (2) an increase in total deductions to reflect the $ 100,000 alleged compensation paid to officers. It is this $ 100,000 deduction for alleged compensation paid to officers in 1988 that ostensibly creates the net operating loss. In the contract for the sale of assets of the transferor, there is contained a 10-year noncompetition clause. Petitioner, by his own admission, has stated that the transferor has been inactive since the sale of these assets in 1985, yet the transferor has been allegedly paying petitioner a $ 100,000 salary every year since 1985. In 1984, when the transferor was active for a full year, petitioner was paid only a $ 60,000 salary. In 1985, when the transferor was active for only 2-1/2 months, petitioner was allegedly paid $ 100,000 compensation. Further, in every year from 1986 to 1988, when the transferor was inactive for the entire year, the transferor claimed yearly deductions on its delinquent returns in the amount of $ 100,000 for compensation paid to petitioner. But, petitioner's tax returns for 1986 and 1988 reported no compensation from the transferor. On the basis of the facts *800 in this case, the transferor's claimed deduction for 1988 and the related carryback have no merit. Deductions are a matter of legislative grace, and taxpayers seeking the benefit of deductions must establish that the conditions which Congress has seen fit to impose on such deductions have been fully satisfied. Deputy v. du Pont, 308 U.S. 488, 493 (1940). Because the taxpayer is privy to the facts that substantiate a deduction, he or she must bear the burden of proving his or her right to and the amount of a claimed deduction. Rule 142(a). In the instant case, not only is petitioner claiming that a net operating loss has been generated by an inactive business, petitioner has offered as substantiation only the 1988 Form 1120, which consists of basically two lines of information, and the amended return for tax year 1985. There is no further evidence from the record that would indicate the transferor's entitlement to the deductions which gave rise to the net operating loss. Petitioner has failed to carry his burden of proof on this issue. Accordingly, the corporation is not entitled to a net operating loss deduction for taxable year 1985. Issue *801 2. Transferee Liability
The second issue for our consideration is whether petitioner is liable as a transferee of the assets of Staff Outdoor Advertising, Inc., for its deficiencies in income tax and additions to tax for taxable years 1984 and 1985. Transferee liability is a secondary and derivative liability for unpaid taxes, and to the extent of the amount transferred, it gives the Internal Revenue Service (IRS) a secondary method for the collection of a transferor's unpaid tax. Phillips v. Commissioner, 283 U.S. 589 (1931); Mysse v. Commissioner, 57 T.C. 680, 700 (1972); C.B.C. Super Markets, Inc. v. Commissioner, 54 T.C. 882, 897 (1970). Generally, in transferee liability cases, the IRS will use the procedures set forth in section 6901.[2] Although section 6901[3] provides a method by which to collect the tax, liability of a transferee is a question of State, rather than Federal law, and the law of the State where the transfer took place normally applies. Commissioner v. Stern, 357 U.S. 39 (1958); Pierce v. Commissioner, 61 T.C. 424, 432 (1974). *802 Rule 142(d) and section 6902 *803 provide that the burden is upon respondent to show that petitioner is liable as a transferee of the property of a taxpayer. Under section 6901, the liability of a transferee can be enforced at law or in equity. Sec. 6901(a)(1). Such liability may arise at law, e.g., where there is a valid contract between the transferor and transferee by which the transferee assumes the tax liability of the transferor. However, in most instances, transferee liability will arise in equity. The elements of transferee liability in equity which will be discussed below are: (1) A transfer of property from the transferor to the transferee; (2) the transfer was made after the tax liability accrued, the transferor was liable for the tax, and the tax is unpaid; (3) the transferor was insolvent at the time of the transfer or was rendered insolvent by the transfer; (4) the transfer was made without full and adequate consideration; and (5) the IRS has made reasonable efforts to collect the tax from the transferor. These elements are a useful guide, although their application in a given case must take into account the pertinent local law. See Commissioner v. Stern, supra. *804 In order to impose transferee liability, there must be a transfer of property. Sec. 6901(a)(1). In the instant case, there were transfers of $ 400,000 and $ 100,000 in cash from Staff Outdoor Advertising, Inc., to its sole shareholder, petitioner, in March 1985. [4] This Court has held that transferee liability is applicable in situations where corporate distributions are made to stockholders for less than adequate consideration. Fibel v. Commissioner, 44 T.C. 647, 658 (1965). Secondly, the transfer must be made after the tax liability accrued, [5] the transferor must be liable for the tax, and the tax must still be unpaid. Mulligan v. Commissioner, 16 T.C. 1489 (1951). *805 In the instant case, the transferor owes corporate income tax for taxable years 1984 and 1985, the transfer of the assets occurred after the tax liability accrued, and this tax is still unpaid.
Thirdly, the transferor must be insolvent at the time of the transfer or rendered insolvent by the transfer.[6]Kreps v. Commissioner, 351 F.2d 1 (2d Cir. 1965), affg. 42 T.C. 660 (1964). If the transferor is insolvent, then the transfer deprives the Government of a means of collection on the transferor's tax liability. Insolvency is determined by state *806 law. Commissioner v. Stern, 357 U.S. 39 (1958). The jurisdiction in which the transfer took place is Ohio; therefore, an examination of Ohio law is necessary. Ohio's law regarding fraudulent conveyances is found in Ohio Revised Code Annotated (Anderson 1979) (hereinafter referred to as Ohio Rev. Code Ann.) section 1336.01 through 1336.12 which is Ohio's codification of the Uniform Fraudulent Conveyances Act. [7] Under section 1336.04, a fraudulent conveyance has occurred if the debtor was insolvent at the time of the transfer or was made insolvent by the transfer and there was lack of fair consideration. Sease v. John Smith Grain Co., 17 Ohio App. 3d 223, 479 N.E. 2d 284 (1984). *807 Ohio Rev. Code Ann. section 1336.04 provides, in relevant part, that every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to actual intent if the conveyance is made or the obligation is incurred without a fair consideration.[8] Creditors of the insolvent corporation who retain the right to pursue a transferee of such corporation include the Government. Delia v. Commissioner, 362 F.2d 400 (6th Cir. 1966), affg. T.C. Memo. 1964-329. Ohio Rev. Code Ann. section 1336.02 provides that a person is insolvent when the present fair salable value of one's assets is less than the amount that will be required to pay his or her probable liability on existing debts as they become absolute and mature. *808 In the instant case, respondent contends that after the 1985 sale of assets to Lamar, the transferor held no assets other than the cash received. Accordingly, respondent contends that the subsequent transfers of cash to petitioner rendered the transferor insolvent. Petitioner's argument is that the transferor was not rendered insolvent by the transfers. In support of this contention, petitioner argues that the transferor had accounts receivable from a $ 400,000 loan to petitioner, coupled with real property owned by the corporation after the transfer, indicating that the transferor was not rendered insolvent by the transfer. The facts indicate, however, that the $ 400,000 transfer to petitioner was not a loan. It is clear from the record, that in receiving these funds, petitioner did not believe it to be a loan to him and had no intention of repaying this amount to the transferor. Petitioner stated to the revenue officer that he never intended to repay the $ 400,000 to the transferor because he owned the corporation, and therefore, it was his money. In addition, petitioner failed to produce any documents such as a note, a loan agreement, or any records of the transferor which *809 were prepared contemporaneously with the transfer indicating that any valid loan was made. The only documents offered into evidence indicating that the transfer made to petitioner was a loan, were the severely delinquent corporate income tax returns filed by petitioner after the revenue officer began his investigation. In fact, four separate documents that were admitted into evidence clearly indicate that the $ 400,000 transfer was not a loan: (1) Form 433-B, Collection Information Statement for Businesses, signed by petitioner under penalty of perjury on February 3, 1987, in which petitioner stated that there were no accounts receivable, including notes to stockholders; (2) Form 4180, Report of Interview Held With Persons Relative to Recommendation of 100 Percent Penalty Assessments, signed by petitioner on February 3, 1987, in which petitioner stated that there were no assets of the corporation; (3) Statement of All Liabilities of Debtor, filed on June 9, 1988, in conjunction with the bankruptcy proceedings and signed under penalty for perjury, in which petitioner listed no outstanding liabilities to the transferor; and (4) Statement of Financial Affairs for Debtor Engaged in *810 Business, also signed by petitioner in conjunction with the bankruptcy proceedings, in which petitioner did not list the transferor as a creditor to which repayment on a loan was made during the year immediately preceding the filing of the petition. Based upon the above, we find that the $ 400,000 transfer was not a loan to petitioner, and therefore, the transferor did not have an asset in the form of a note receivable from petitioner. Petitioner argues further that the transferor was not made insolvent by the transfers because it owned real property through 1987. The real property to which petitioner refers is the property located at 533 Wells Avenue. Petitioner's accountant testified that the property allegedly owned by the transferor was the 533 Wells Avenue property. A land installment contract admitted into evidence, however, reflects that petitioner and his wife were the owners of the property located at 533 Wells Avenue. Apart from a statement on the 1967 corporate tax return, which we find unpersuasive, there was no evidence offered to show that this property ever belonged to the transferor. The revenue officer testified that he made a search of the public records which *811 did not reveal any property owned by the transferor. It is clear from the record that it was petitioner and his wife who owned this real property and not the transferor. Based upon the above, we find that after the transfer to petitioner, the transferor had no assets, and therefore the present fair salable value of its assets was less than the amount required to pay its debts. Accordingly, we find that the transferor was rendered insolvent by the transfer. Fourthly, the transfer must have been made without full and adequate consideration. Bartmer Automatic Self Service Laundry, Inc. v. Commissioner, 35 T.C. 317, 322 (1960). In order to determine whether full and adequate consideration was given and received for the assets transferred, both the property received by the transferor and the property transferred to the transferee must be valued. Ohio Rev. Code Ann. section 1336.03 provides that fair consideration is given for property, or obligation: (A) When in exchange for such property, or obligation, as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied; or (B) When such property or obligation *812 is received in good faith to secure a present advance or antecedent debt in amount not disproportionately small as compared with the value of the property or obligation obtained.
Petitioner contends that he gave adequate consideration for the receipt of the $ 400,000 because he was obligated to pay principal and interest in installments. In support of this position, petitioner offers the transferor's corporate tax returns for tax years 1985 through 1989 which show loans to stockholders and interest income paid by petitioner to the transferor on the alleged loan. Petitioner further contends that the principal payments on the alleged loan were made with his $ 100,000 yearly salary. Petitioner mistakenly believes, however, that a few entries, claimed on five severely delinquent returns filed only after a revenue officer had commenced an investigation into the tax liability of his corporation, are sufficient to substantiate that adequate consideration had been paid. The transferor was active only 2-1/2 months for the taxable years 1985 through 1989 and yet petitioner expects this Court to believe that he was drawing a $ 100,000 yearly salary from this inactive business and using *813 it to make principal payments on the alleged loan. Respondent contends that the filing of these delinquent corporate returns was a transparent attempt to show that the $ 400,000 was repaid to the transferor by petitioner. We agree with respondent. Accordingly, we find that no consideration was given in exchange for the receipt of the $ 400,000. Lastly, in order to impose transferee liability, respondent must have pursued all reasonable remedies against the transferor for payment of the tax because transferee liability is secondary and derivative. Bartmer Automatic Self Service Laundry, Inc. v. Commissioner, supra. It has already been established that after the transfer of assets to Lamar, the transferor was inactive and had no assets from which to make collection on the unpaid tax. When the assets of the transferor have been exhausted, any attempt by respondent to thereafter recover the taxes from the transferor would be futile, and equity does not insist upon such an idle formality as a prerequisite to proceeding directly against the transferee. Coca-Cola Bottling Co. of Tucson, Inc. v. Commissioner, 37 T.C. 1006, 1013 (1962), *814 affd. 334 F.2d 875 (9th Cir. 1964). Accordingly, this requirement is satisfied as it is apparent that any proceeding against the transferor would be futile. Respondent has characterized petitioner's efforts in this case as a feeble and contradictory attempt to manufacture an after-the-fact paper trail instituted to avoid petitioner's transferee liability. We agree. Respondent has made out a prima facie case of transferee liability and has therefore satisfied his burden. Petitioner has failed to introduce evidence sufficient to negate any element of transferee liability. Accordingly, petitioner is liable as a transferee of the assets of Staff Outdoor Advertising, Inc. To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. Also on June 24, 1991, Form 1120X for 1987 was filed; however, it was not admitted into evidence as it was filed beyond the period of the statute of limitations. Petitioner also claimed to have filed Form 1120X for 1986; however, there is no record of this Form's having been filed with the IRS, and it was therefore also not admitted into evidence.↩
2. There are several methods by which the IRS may impose transferee liability. See, e.g., United States v. Adams Building Co., 531 F.2d 342 (6th Cir. 1976), where the court applied the trust fund doctrine; Ginsberg v. Commissioner, 305 F.2d 664 (2d Cir. 1962), affg. 35 T.C. 1148↩ (1961), where the court applied the law of fraudulent transfers.
3. SEC. 6901. TRANSFERRED ASSETS. (a) Method of Collection. -- The amounts of the following liabilities shall, except as hereinafter in this section provided, be assessed, paid, and collected in the same manner and subject to the same provisions and limitations as in the case of the taxes with respect to which the liabilities were incurred: (1) Income * * * taxes. -- (A) Transferees. -- The liability, at law or in equity, of a transferee of property -- (i) of a taxpayer in the case of a tax imposed by subtitle A (relating to income taxes),↩
4. In Leach v. Commissioner, 21 T.C. 70, 79↩ (1953), this Court held that if a stockholder is also an officer of a corporation and receives a salary which is unreasonable or excessive, the stockholder can be treated as a transferee on the theory that this amount is in effect the equivalent of a distribution of corporate assets.
5. See, e.g., Papineau v. Commissioner, 28 T.C. 54, 58↩ (1957) where this Court stated that the transferee is liable for the transferor's taxes for the year of transfer and prior years, and penalty and interest in connection therewith, to the extent of the assets received from the transferor, even though the transferor's liability was not finally determined at the time of the transfer.
6. Insolvency is not required where a transfer was made to hinder, delay, or defraud the Government in its attempt to collect the tax owed by the transferor. Bartmer Automatic Self Service Laundry, Inc. v. Commissioner, 35 T.C. 317↩ (1960).
7. This chapter has recently been repealed and replaced with the Uniform Fraudulent Transfer Act.↩
8. See Cellar Lumber Co. v. Holley, 9 Ohio App. 2d 288, 224 N.E.2d 360↩ (1967).